**D.R. HORTON—TEXAS, LTD., Appellant,**

**v.**

**MARKEL INTERNATIONAL INSUR-ANCE COMPANY, LTD. and Sphere Drake Insurance, Ltd., Appellees.**

No. 14–05–00486–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 26, 2006.

Robert B. Gilbreath, Hawkins, Parnell & Thackston, LLP, Dallas, Brandy M. Wingate, for appellant.

Leslie Dean Pickett, Galloway, Johnson, Tompkins, Burr and Smith, Houston, Ja-

cob Allen DeLeon, Robert Shults, Todd Frederick Newman, Kristi L. Hamilton, for appellee.

Panel consists of Justices FOWLER, EDELMAN, and GUZMAN.

## SUBSTITUTE MEMORANDUM OPINION ON REHEARING

EVA M. GUZMAN, Justice.

We withdraw our memorandum opinion of June 29, 2006 and issue this substitute memorandum opinion on rehearing. We overrule the various motions for rehearing filed by appellant D.R. Horton and appellee Sphere Drake Insurance, Ltd.

In this appeal from take-nothing summary judgments granted in favor of appellees, Markel International Insurance Company, Limited[1] ("Markel") and Sphere Drake Insurance, Limited[2] ("Sphere Drake"), we examine whether appellees had a duty to defend and indemnify appellant, D.R. Horton—Texas, Limited[3] ("Horton"), as an additional insured in an underlying lawsuit arising out of the construction and warranty repair of a home. Because Markel satisfied its burden of proof under the "eight corners rule" on all of Horton's claims, except Horton's claims of statutory and common law misrepresentation, we affirm in part, reverse in part the trial court's judgment as to Markel, and remand that portion of the case. Because Sphere Drake failed to meet its bur-

den of proof under the "eight corners rule," we reverse the trial court's summary judgment in favor of Sphere Drake and remand that portion of the case as well.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 31, 2002, James and Cicely Holmes filed suit against homebuilder Horton,[4] alleging the home they had purchased from a third party in July 2001 contained latent defects that led to the propagation of toxic mold, rendering the home uninhabitable.[5] The Holmeses claimed that in October 2001, shortly after moving into the residence, they discovered toxic mold in the house. They further claimed that during the mold remediation process, latent defects were discovered in the construction and design of the home, particularly in connection with the chimney, roof, vent pipes, windows, window frames, and flashing around the roof and chimney. The Holmeses alleged that these defects allowed water to enter the home, and that Horton had made faulty, incomplete and negligent attempts to repair these latent defects.

Horton demanded that Markel and Sphere Drake defend it in the *Holmes* suit. Sphere Drake had insured independent contractor Rosendo Ramirez from September 16, 1992 through September 16, 1999, and Horton had been named on the policy as an additional insured for certain claims.[6] Markel insured Ramirez from September 16, 1999 through September 16, 2002,[7] and

---

1. Markel is the successor to Terra Nova Insurance Co., Ltd.; the term "Markel" is used herein to refer to both.

2. Sphere Drake is the successor to Odyssey Re London Ltd.; the phrase "Sphere Drake" therefore refers to both.

3. D.R. Horton—Texas, Ltd. is the successor in interest to D.R. Horton Homes, Inc.; the word "Horton" refers to both.

4. *James and Cicely Holmes v. D.R. Horton Homes, Inc. and D.R. Horton—Texas, Limited,*

Cause No.2002–38572 (280th Dist. Ct., Harris County, Tex. July 31, 2002).

5. Horton built the home in 1992.

6. A copy of the policy is not presented for our review.

7. Beginning in 1999, Ramirez was insured by Terra Nova; however, the parties agree that Markel is Terra Nova's successor in interest.

Horton was named as an additional insured for claims arising out of Ramirez's work. Although the *Holmes* petition does not mention Ramirez or any other subcontractor, Horton asserts that Ramirez performed the masonry work for the original construction of the Holmes residence as well as repairs performed in 1999. Horton therefore claims that Ramirez's insurers are required to defend Horton in the *Holmes* suit.

Markel did not respond to Horton's demand for defense, and Sphere Drake denied coverage on the basis that the damage manifested after its coverage terminated.[8] After both insurers failed to assume Horton's defense, Horton hired its own defense counsel and settled the case for $50,000.00.

In December 2003, Horton filed suit against Markel and Sphere Drake for reimbursement of the settlement funds and defense costs. Horton stated claims against both insurers for breach of contract, violations of the Texas Insurance Code, and misrepresentation.

On March 11, 2005, Markel filed a traditional motion for summary judgment, asking the court to find that it had no duty to defend or indemnify Horton. Sphere Drake filed a similar motion on April 1, 2005. Horton responded to Markel's motion on April 11, 2005, and pursuant to a Rule 11 agreement, responded to Sphere Drake's motion on April 13, 2005. Although the title of Horton's response to Markel's motion gave no indication that the response was combined with a motion for continuance of the April 18, 2005 hearing on Markel's summary judgment motion, the request was included under the heading "Objections" on the fourth page of the thirty-eight page response. The hearing was not continued, and the trial court granted summary judgments in favor of Markel and Sphere Drake.

## II. Issues Presented

On appeal, Horton seeks reversal of both summary judgments. Although Horton asserts numerous subpoints, the central issues are whether (a) Markel had a duty to defend and indemnify Horton in the *Holmes* suit, (b) Sphere Drake had a duty to defend and indemnify Horton in the *Holmes* suit, (c) the trial court improperly granted Markel summary judgment on Horton's claims of fraud and misrepresentation asserted after Markel moved for summary judgment, and (d) the trial court improperly denied Horton's motion to continue the hearing on Markel's motion for summary judgment.

## III. Standard of Review

We review the trial court's grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). To be entitled to summary judgment, the movant has the burden of showing there are no genuine issues of material fact as to one or more of the essential elements of the plaintiff's cause of action. Tex.R. Civ. P. 166a. In reviewing the record and determining whether a material fact issue precludes summary judgment, evidence favorable to the non-movant will be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts must be resolved in the non-movant's fa-

---

8. In a denial letter dated May 14, 2003, Sphere Drake reserved its rights to deny, modify, or limit coverage on other grounds. The Holmeses amended their petition on October 9, 2003, and Horton contends Sphere Drake again denied coverage. Although the existence or contents of a second denial letter is not known, the parties do not contend any such letter limits the bases for a denial of coverage by Sphere Drake.

vor. *Nixon v. Mr. Prop. Mgmt. Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985).

## IV. ANALYSIS

### A. THE MARKEL SUMMARY JUDGMENT

In their motions for summary judgment, Markel and Sphere Drake argued *inter alia* they had no duty to defend Horton in the underlying suit because the *Holmes* petition did not allege Ramirez's work caused damage. Because this argument is potentially dispositive, we address it first.

#### 1. The Duty to Defend: the "Eight Corners" Rule

An insurer's duty to defend its insured is determined by the "eight corners" rule, which requires that we compare the allegations in the petition filed against the insured with the coverage afforded by the insurance policy. *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex.2002). If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997) (per curiam). On the other hand, an insurer is obligated to defend a lawsuit if the facts alleged in the pleadings give rise to any claim within the coverage of the policy. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.,* 141 S.W.3d 198, 201 (Tex.2004). "When applying the eight corners rule, we give the allegations in the petition a liberal interpretation." *Merchants Fast Motor Lines, Inc.,* 939 S.W.2d at 141. The insurer owes a duty to defend if the third-party petition "potentially" states a claim within coverage. *See id.*

In reviewing the pleadings in light of the insurance policy's provisions, we focus on the petition's factual allegations showing the origin of the damages, and not on the legal theories alleged. *Merchants Fast Motor Lines, Inc.,* 939 S.W.2d at 141. Although we strictly construe the pleadings against the insurer and resolve any doubt in favor of coverage, not every doubt requires resolution of the duty to defend in favor of the insured. We will not read facts into the petition, nor will we look outside of the petition, or imagine factual scenarios which might trigger coverage. *Merchants Fast Motor Lines, Inc.,* 939 S.W.2d at 142. Thus, the duty to defend is not affected by facts ascertained before suit or developed during the process of litigation, or by the ultimate outcome of the suit. *See Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 25 (Tex.1965).

If an insurer has a duty to defend its insured against any claim pleaded in the petition of the underlying suit, then the insurer is required to defend its insured against all claims in that petition. *See Stumph v. Dallas Fire Ins. Co.,* 34 S.W.3d 722, 728 (Tex.App.-Austin 2000, no pet.). Our natural starting point is therefore a review of the coverage afforded by the policy.

#### a. The Markel Policy

Horton argues it is an additional insured under Ramirez's commercial general liability insurance policy with Markel, and as an additional insured, it is entitled to indemnification and defense in the *Holmes* lawsuit. The policy, effective from September 16, 2001 to September 16, 2002, specifically lists Horton as an additional insured, "but only with respect to liability arising out of '[Ramirez's] work' for [Horton] by or for [Ramirez]."

#### b. The Holmes Petition

The factual allegations in the *Holmes* petition include in pertinent part:

On or about July 3, 2001, Plaintiffs James and Cicely Holmes purchased a home located at 2330 Pin Hook Ct., Seabrook, Texas, from [prior owners. Prior owners] purchased the property on or about August 17, 2000, from [the original purchasers]. The original purchasers acquired the property on April 20, 1993 from D.R. Horton, which designed and built the home. . . .

In October 2001, shortly after moving into the residence, the Holmes[es] discovered mold in the home. That mold was tested and found to be of highly toxic strain, present in significant concentrations and scattered throughout various locations in the residence. As a result, and [sic] the family was ordered to vacate the home immediately and forced to obtain alternate accommodations.

Treatment of the mold and attempted remediation of the home was immediately commenced. During the course of the remediation, it was discovered that numerous latent defects existed in the construction, design and workmanship of the house. These problems include, but are not limited to, (1) problems with the flashing around the roof and chimney, and prior attempted repairs of that roof and flashing, (2) the design and construction of the chimney and attempted repairs of the chimney, and (3) construction design and workmanship of the roof and vent pipes. Also discovered were defects in the windows and window framing which facilitated water intrusion into the home and mold propagation. As a result of these deficiencies in the design, construction and workmanship of their residence, as well as faulty, incomplete and negligent attempts to repair those defects, the Holmes[es] have incurred substantial expenses associated with repairing the deficiencies, remediation/abatement of the mold in

the residence, replacement/disposal of contaminated personal effects, relocation expenses and attorney fees. Although D.R. Horton was notified on repeated instances of the deficiencies and/or defects, D.R. Horton refused and/or failed in its attempts to make the necessary repairs in a good and workman like manner, thus causing the Holmes' [sic] damage.

Defendants negligently, carelessly and wrongfully failed to use reasonable care in the construction and repair of that residence commensurate with the requirements of residential building standards of performance and failed to use proper and adequate materials in that construction and those repairs attempted. Such negligence resulted in a subsequent invasion of toxic mold contaminating the air and living environment in and around the residence rendering the structure uninhabitable and fouling the personal property of the Plaintiffs.

### c. Comparison of the Policy and the Pleadings

■ Pursuant to the eight corners rule, we compare the factual allegations of the *Holmes* petition with the language of the Markel policy to determine if the facts alleged in the petition give rise to any claim within the coverage of the policy. *See Utica Nat'l Ins. Co. of Tex.*, 141 S.W.3d at 201.

The plain language of the additional insured endorsement limits Markel's liability to those claims arising out of work Ramirez performed for Horton. The *Holmes* petition does not list Ramirez as a defendant, does not make any reference to Ramirez, and does not allege the Holmeses were damaged by the acts or omissions of any person or entity other than Horton. Given their most liberal interpretation in

favor of coverage, the factual allegations in the *Holmes* petition cannot be interpreted as stating a claim for damages arising from Ramirez's work.

Horton argues that because the petition is to be interpreted from the standpoint of the insured,[9] we must accept Horton's conclusion that the *Holmes* allegations arise from Ramirez's work. This argument misapprehends the object of our inquiry. Our task is not to determine if the underlying facts that prompted the allegations are covered, but whether the petition alleges facts that are covered.

Horton correctly argues we may draw inferences from the petition that may lead to a finding of coverage. An inference is a fact or proposition drawn from an admitted or otherwise proven fact. *Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 400 (Tex.App.-Houston [1st Dist.] 1993, writ dism'd w.o.j.) (op. on reh'g). It is a logical consequence flowing from a fact. *Id.* In other words, the eight corners rule does not require us to ignore those inferences that logically flow from the facts alleged. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 645 (Tex.2005) (although the petition against the insured homeowner did not contend the event alleged to have caused damage was undertaken with a profit motive, the Court inferred a profit motive and found the claims fell within a "business pursuits" exclusion to the policy because "[o]ne generally does not allow limestone mining with dynamite blasting to occur on his or her property without some expectation of remuneration or monetary gain."). We may not, however, rely upon facts supplied by extrinsic evidence. *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 636 (Tex.1973) ("The duty to defend does not depend on what the facts are, or what might be determined finally by the trier of the facts. It depends only on what the facts are alleged to be.").

We recognize that some state and federal courts interpret Texas law to permit a court to consider extrinsic evidence in determining whether a petition states a covered claim.[10] To date, however, the Texas Supreme Court has not recognized such an exception. *See, e.g., GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 309–10 (Tex.2006) (refusing to recognize an exception to the eight corners rule to consider evidence relating both to coverage and liability); *Hallman*, 159 S.W.3d at 644–45 (inferring a profit motive from the nature of the activity rather than relying on extrinsic evidence of a profit motive); *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 847–48 (Tex.1994) (the duty to defend "is determined *solely* by the allegations in the pleadings filed against him ... [i]f a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured.") (emphasis added). Because the duty to defend is determined by the allegations rather than the underlying facts, a party's knowledge of underlying facts does not affect that determination. *See Argonaut Sw. Ins. Co.*, 500

---

9. *See King,* 85 S.W.3d at 188 (courts must view the event that is alleged to have caused the injury from the view point of the insured).

10. *See, e.g., State Farm Fire & Cas. Co. v. Wade,* 827 S.W.2d 448, 452–53 (Tex.App.-Corpus Christi 1992, writ denied); *Gonzales v. Am. States Ins. Co. of Texas,* 628 S.W.2d 184, 187 (Tex.App.-Corpus Christi 1982, no writ); *Cook v. Ohio Cas. Ins. Co.,* 418 S.W.2d 712, 715–16 (Tex.App.-Texarkana 1967, no writ); *W. Heritage Ins. Co. v. River Entm't,* 998 F.2d 311, 313 (5th Cir.1993); *but see Tri–Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.,* 981 S.W.2d 861, 863–64 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (applying the strict eight corners approach to reverse the trial court's use of extrinsic evidence).

S.W.2d at 636 ("The duty to defend does not depend on what the facts are...."); 46 Tex. Jur.3d, Insurance Contracts & Coverage § 1018 (1995).

Although Horton produced a significant amount of summary judgment evidence that is relevant to both coverage and liability and that links Ramirez to the injuries claimed by the Holmeses, an insured cannot supply such factual allegations when the pleadings and reason do not.[11] *See Heyden Newport Chem. Corp.*, 387 S.W.2d at 24 ("[I]n determining the duty of a liability insurance company to defend a lawsuit the allegations of the complainant should be considered in the light of the policy provisions without reference to the truth or falsity of such allegations and without reference to what the parties know or believe the true facts to be .... ") (emphasis added). To recognize such an exception "would by necessity conflate the insurer's defense and indemnity duties without regard for the policy's express terms." *GuideOne*, 197 S.W.3d at 310.

Accordingly, we affirm the summary judgment in favor of Markel on the issue of Markel's duty to defend.

When a trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm summary judgment if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex.2000). Having found that the application of the eight corners rule supports the judgment, we need not and do not consider the other challenges raised by Horton regarding Markel's duty to defend.

### 2. The Duty to Indemnify

An insurer's duty to defend is separate and distinct from its duty to indemnify. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997) (per curiam). Unlike the duty to defend, the duty to indemnify is based on facts proven, not on pleadings. *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins.*

---

11. In its various motions for rehearing, Horton argues that both the Texas Supreme Court and this court recognize an exception to the eight corners rule to consider evidence related solely to coverage. *See GuideOne*, 197 S.W.3d at 308 ("Although this Court has never expressly recognized an exception to the eight-corners rule, other courts have."); *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, No. 14–05–00487–CV, 2006 WL 1892669, at *5 (Tex.App.-Houston [14th Dist.] July 6, 2006, no pet. h.) ("[M]any courts have stated that extrinsic evidence may be used in duty-to-defend cases to establish fundamental coverage facts ... [but] courts do not allow evidence of the specific alleged occurrence in order to determine whether the occurrence itself is covered by the policy."). Horton argues that extrinsic evidence of Ramirez's work relates solely to coverage, and under the exception to the eight corners rule recognized in *GuideOne* and *Pine Oak*, should be considered. We must first point out that, contrary to Horton's interpretation, neither case presented the question whether an exception to the eight corners rule should be recognized to

allow courts to consider "evidence relating solely to a fundamental coverage issue." In both *GuideOne* and *Pine Oak*, the authoring court declined to recognize an exception to the eight corners rule to consider extrinsic evidence related to *both* coverage and liability. *GuideOne*, 197 S.W.3d at 309–10; *Pine Oak*, 2006 WL 1892669, at *6. To the extent that either opinion indicates that the authoring court would recognize an exception to the eight corners rule to consider evidence related solely to coverage, such language is mere dicta. *See Bayou Bend Homes, Inc. v. Scottsdale Ins. Co.*, No. H–05–1544, 2006 WL 2037564, at * 5 (S.D.Tex. July 18, 2006) ("Although the Texas Supreme Court explicitly rejected the use of extrinsic evidence that was relevant both to coverage and to the merits of the underlying action, it did not rule on the validity of a more narrow exception that would allow extrinsic evidence solely on the issue of coverage."). More importantly to the disposition of this case, both *GuideOne* and *Pine Oak* refused to consider extrinsic evidence of the type at issue here: i.e., evidence related to both coverage and liability.

*Co.*, 130 S.W.3d 181, 190 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

■ Even though we do not look at the specific legal theories alleged to determine the duty to indemnify, if the underlying petition does not raise factual allegations sufficient to invoke the duty to defend, then even proof of all of those allegations could not invoke the insurer's duty to indemnify. *Reser v. State Farm Fire & Cas. Co.*, 981 S.W.2d 260, 263 (Tex.App.-San Antonio 1998, no pet.). For this reason, the same arguments that disposed of Markel's duty to defend also dispose of its duty to indemnify. *See Griffin,* 955 S.W.2d at 84. Because the *Holmes* suit did not allege facts covered by the policy, even proof of those facts would not trigger coverage. We therefore affirm the trial court's summary judgment in favor of Markel on the issue of Markel's duty to indemnify.

### 3. Horton's Extra–Contractual Claims Against Markel

■ Horton argues that even if we affirm summary judgment in Markel's favor on the issues of Markel's duties to defend and indemnify, the judgment should be a partial summary judgment and not a "take-nothing" summary judgment because Markel's motion did not address the allegations of fraud [12] and of statutory and common law misrepresentation raised in Horton's supplemental petition. Horton's first supplemental petition, filed after Markel moved for summary judgment, adds an allegation of "violations of the Texas Insurance Code/misrepresentation" that is not addressed in Markel's motion. In its brief, Horton clarifies this allegation as a claim of "statutory and common law misrepresentation."

■ Horton is correct; Markel did not move for summary judgment on Horton's misrepresentation claims. Generally, a court may not grant judgment on a cause of action not addressed in a motion for summary judgment. *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex.1983) (per curiam). Markel's motion requested judgment on the claims Horton asserted in its original petition, but did not seek judgment on the later-filed misrepresentation claims. Because the trial court's judgment included these claims, it granted more relief than requested. *See Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex.1993), (summary judgment may not be granted on a ground not addressed in the motion), *overruled on other grounds, Lehmann v. Har–Con Corp.*, 39 S.W.3d 191 (Tex.2001). We therefore reverse the judgment in favor of Markel to the extent that it grants summary judgment on Horton's claims of statutory and common law misrepresentation and remand that portion of the case for further proceedings consistent with this opinion.

### 4. Motion for Continuance

■ Horton also appeals the denial of its motion to continue the hearing on Markel's motion for summary judgment. Within Horton's response to Markel's motion for summary judgment is a request to continue the hearing on Markel's motion for summary judgment in order to conduct additional discovery. Neither Markel's response nor a copy of the order denying the motion has been presented for our review. Moreover, there is no indication Markel ever offered a proposed order, conferred with opposing counsel regarding the proposed continuance, or even set the motion for hearing or submission.

---

**12.** Because neither Horton's original petition nor its first supplemental petition stated a cause of action for fraud, this claim was not alleged or adjudicated.

We will not disturb a trial court's order denying a motion for continuance unless the trial court has committed a clear abuse of discretion. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 800 (Tex.2002). A trial court "abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). Here, however, the evidence does not support a conclusion that the trial court acted unreasonably.

Even if we were to assume that the parties agreed to have the motion for continuance heard at the hearing on the motion for summary judgment and the trial court denied the motion, we cannot say denial was arbitrary or unreasonable. On its face, Markel's motion failed to comply with Tex.R. Civ. P. 252 (application for continuance must "state that the continuance is not sought for delay only, but that justice may be done"), Harris (Tex.) Civ. Dist. Ct. Loc. R. 3.3.1 (Motions "shall be accompanied by a proposed order granting the relief sought."); Harris (Tex.) Civ. Dist. Ct. Loc. R. 3.3.3 ("Motions shall state Monday at 8:00 a.m. as the date for written submission. This date shall be at least 10 days from filing, except on leave of court."); and Harris (Tex.) Civ. Dist. Ct. Loc. R. 3.3.6 (requiring a certificate of conference). Furthermore, when a party receives notice of a summary judgment hearing and the notice gives more than the twenty-one days required by the rules of civil procedure, denial of a motion for continuance based on lack of time to prepare generally is not an abuse of discretion. *Karen Corp. v. Burlington N. & Santa Fe Ry. Co.,* 107 S.W.3d 118, 124 (Tex.App.-Fort Worth 2003, pet. denied). Here, Markel set the hearing on its motion for summary judgment thirty-five days after the motion was filed. We therefore overrule Horton's procedural challenge.

## B. THE SPHERE DRAKE SUMMARY JUDGMENT

Horton and Sphere Drake agree that the most recent Sphere Drake policy insuring Horton expired on September 16, 1999, nearly three years before the Holmeses sued Horton. Despite the expiration of the policies, Horton argues the Sphere Drake policies provide coverage for the Holmeses' claims.

Sphere Drake moved for traditional summary judgment on Horton's claims, arguing its policies afford no coverage because (1) the Holmeses lacked standing to bring suit against Horton, or Horton was judicially estopped from denying that the Holmeses lacked standing, (2) the *Holmes* pleadings did not allege damages manifested prior to the expiration of the Sphere Drake policies in 1999, (3) the *Holmes* pleadings did not allege damages arising from Ramirez's work, and (4) Horton had not previously produced evidence that Ramirez worked on the residence.

### 1. Lack of Standing

Sphere Drake argues that Texas law bars a purchaser of real property from asserting a claim for property damage occurring before the purchaser owned the property unless the deed expressly transfers the cause of action to the purchaser. *See Lay v. Aetna Ins. Co.,* 599 S.W.2d 684, 686 (Tex.Civ.App.-Austin 1980, writ ref'd n.r.e.) (holding that a cause of action for injury to real property is a personal right which belongs to the person who owns the property at the time of the injury; without express provision, the right does not pass to a subsequent purchaser of the property). According to Sphere Drake, the individuals who owned the residence before the Holmeses did not transfer their property damage claims, if any, to the Holmeses. Therefore, Sphere Drake contends the

Holmeses lack standing to assert claims for property damage occurring prior to their purchase of the residence in 2001. Because the Sphere Drake policies expired long before the Holmeses bought the property, Sphere Drake argues the Holmeses lack standing to assert covered claims against Horton.

This argument is without merit for several reasons. First, the argument lacks factual support. Although Sphere Drake claims "It is undisputed that the [Holmeses] purchased their home in 2001 without any transfer of possible damage claims," Sphere Drake produced no competent summary judgment evidence in support of this contention. Second, although Sphere Drake reurges this argument on appeal, it previously conceded the Holmeses had standing to bring their claims.[13] Finally, in its reply to Horton's response to the motion for summary judgment, Sphere Drake further admits the Holmeses' standing to bring claims "does not have any bearing on coverage." Thus, we cannot affirm Sphere Drake's summary judgment on the basis that the Holmeses lacked standing to sue Horton.[14]

■ In a related argument, Sphere Drake contends that because Horton filed a verified answer in the *Holmes* suit asserting the Holmeses lacked standing, Horton is now judicially estopped from denying that the Holmeses lacked standing. This argument must also fail. Setting aside Sphere Drake's admission that the issue of the Holmeses' standing has no

bearing on coverage issues, Sphere Drake has not shown that judicial estoppel applies.

■ The doctrine of judicial estoppel applies only if (1) the party against whom judicial estoppel is asserted made a prior inconsistent position in a judicial proceeding; (2) the party successfully maintained the prior position; (3) the prior inconsistent statement was not made inadvertently or because of mistake, fraud, or duress; and (4) the statement was deliberate, clear, and unequivocal. *Vinson & Elkins v. Moran,* 946 S.W.2d 381, 396 (Tex.App.-Houston [14th Dist.] 1997, writ dism'd by agr.). In the *Holmes* suit, Horton filed a sworn pleading asserting the Holmeses lacked standing to assert their claims; however, Horton did not successfully maintain this position. Thus, we cannot affirm Sphere Drake's summary judgment on the grounds that Horton is judicially estopped from asserting that the Holmeses lacked standing to assert their claims.[15]

## 2. Manifestation of Damages

■ Sphere Drake next argues its policies provide no coverage for damages that did not manifest during the time its policies were in effect. It is undisputed that Sphere Drake's policies expired in 1999, and there are no allegations mold was present in the house before it was purchased by the Holmeses. Horton further admits there are no complaints of mold or damage to the house prior to October, 2001.

---

**13.** *See* TEX. PROP.CODE ANN. § 27.002(a) (Vernon Supp. 2005) (the Residential Construction Liability Act applies to and permits an action by a subsequent purchaser of a residence against a contractor to recover damages arising from a construction defect).

**14.** We do not address the extent to which the reasoning of *Lay* applies to these facts, which falls within the Residential Construction Lia-

bility Act, and in which (a) injuries to both personal and real property were alleged, and (b) no injuries to either personal or real property were alleged to have occurred prior to the Holmeses' purchase of the real property.

**15.** We do not reach the question of whether a party may be judicially estopped from asserting a legal theory, as opposed to a fact.

As Sphere Drake points out, both the Fifth Circuit and Texas state courts have interpreted policies to afford coverage only when the damages manifest during the policy period. *See, e.g., Coastal Ref. & Mktg., Inc. v. Coastal Offshore Ins., Ltd.,* 14–94–01140–CV, 1996 WL 87205, *3 (Tex. App.-Houston [14th Dist.] Feb. 29, 1996, no writ) (not designated for publication); *Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.,* 852 S.W.2d 252, 257 (Tex.App.-Dallas 1993), *writ denied per curiam,* 889 S.W.2d 266 (Tex. 1994); *Dorchester Dev. Corp. v. Safeco Ins. Co.,* 737 S.W.2d 380, 381–82 (Tex.App.-Dallas 1987, no writ); *Am. Home Assurance Co. v. Unitramp, Ltd.,* 146 F.3d 311, 313–14 (5th Cir.1998); *Snug Harbor, Ltd. v. Zurich Ins.,* 968 F.2d 538, 544–45 (5th Cir.1992); *but see Pilgrim Enters., Inc. v. Maryland Cas. Co.,* 24 S.W.3d 488, 497–98 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (holding that insurance coverage was triggered on the date of exposure to conditions that caused damage, rather than from date damage was manifested). Sphere Drake urges us to conclude that because the *Holmes* petition did not allege damages before 2001, Sphere Drake's policies afforded no coverage, and thus, Sphere Drake had no duty to defend or indemnify Horton.

Sphere Drake, however, overlooks that each of the cases cited above construes specific policy language. *See Coastal Ref.*

& *Mktg., Inc.,* 1996 WL 87205at *1 (construing the insuring agreement provision); *Cullen/Frost Bank of Dallas,* 852 S.W.2d at 256–58 (construing the insuring clause and the terms "property damage" and "occurrence"); *Dorchester Dev. Corp.,* 737 S.W.2d at 381–82 (construing the insuring agreement provision and an exclusion); *Unitramp, Ltd.,* 146 F.3d at 313 n. 1 (construing the "occurrence" clause); *Snug Harbor,* 968 F.2d at 542 n. 9 (construing the insuring agreement provision); *Pilgrim Enters., Inc.,* 24 S.W.3d at 499 (construing the "occurrence" and "bodily injury or property damage" clauses); *see also Am. Physicians Ins. Exch.,* 876 S.W.2d at 844 n. 4 (discussing differences between a "claims-made" policy and an "occurrence" policy); *Allstate Ins. Co. v. Hicks,* 134 S.W.3d 304, 309 (Tex.App.-Amarillo 2003, no pet.) ("[T]he term "occurrence" is typically a defined term in liability insurance policies ... [t]hat the term is given differing constructions in different cases involving different policies is not surprising...."). In contrast, Sphere Drake failed to offer evidence that the specific language of its policies limits coverage to damage manifested within the policy period.[16] Although Sphere Drake attached a copy of a May 14, 2003 letter to Horton's attorneys purporting to recite policy terms and denying coverage of claims previously made by the Holmeses against Horton,[17] the letter was offered solely as evidence

**16.** Although application of the "eight corners" rule requires the examination of two documents, Sphere Drake failed to offer evidence of the contents of either. Sphere Drake attached a copy of the original petition in the *Holmes* suit, but that pleading had been superceded for almost eighteen months at the time Sphere Drake moved for summary judgment. However, Horton supplied the deficiency, attaching a copy of the amended petition in the *Holmes* suit to its response to Markel's motion for summary judgment, and incorporating that evidence by reference to

specific exhibits in its response to Sphere Drake's motion for summary judgment. Thus, the *Holmes* amended petition was properly included as summary judgment evidence. *See Wilson v. Burford,* 904 S.W.2d 628, 629 (Tex.1995) ("Rule 166a(c) plainly includes in the record evidence attached either to the motion or to a response.").

**17.** The Holmeses subsequently amended their petition, and Horton claims that Sphere Drake again denied coverage.

that Drake "issued liability policies to Ramirez for the period September 16, 1992 through September 16, 1999, with Horton listed as an additional insured under the policies."[18] Significantly, the letter was not offered as summary judgment evidence of the terms of the policies.

Because Sphere Drake moved for traditional summary judgment, all doubts must be resolved in the nonmovant's favor. *See Nixon*, 690 S.W.2d at 548–49. Neither we nor the trial court can simply presume that the terms recited in the denial-of-coverage letter accurately reflect all relevant policy terms, particularly when Sphere Drake made no such representations. Thus, we do not reach the question of whether the particular terms of Sphere Drake's policies provide coverage only if damages manifest during the policy period. Because Sphere Drake has not conclusively demonstrated the absence of a material fact regarding the terms of its policies, we will not affirm the summary judgment on the grounds that those terms restrict coverage to claims that manifest damage during the policy period. *See Pilgrim Enters., Inc.*, 24 S.W.3d at 497–99 (explaining that the

policy's language determines what events trigger coverage).

### 3. No Allegations Regarding Ramirez or Ramirez's Work

Like Markel, Sphere Drake moved for summary judgment on the additional ground that the *Holmes* petition failed to state a covered claim because none of its factual allegations state or infer that the injuries arose out of Ramirez's work. Unlike Markel, however, Sphere Drake offered no evidence that its coverage is limited to claims arising from Ramirez's work.[19] Thus, we cannot affirm Sphere Drake's summary judgment on this basis.

### 4. Failure to Produce Evidence Ramirez Performed Work Causing Damages

Finally, Sphere Drake moved for traditional summary judgment on the basis that Horton "has not produced any evidence whatsoever indicating that Ramirez actually performed any work on the Home or any evidence that such work caused the alleged damages" to the Holmeses.[20] Specifically, Sphere Drake complained that in response to Sphere Drake's requests for production, Horton

---

**18.** The letter lists the effective dates, limits, and policy numbers of "policies issued to Rosendo Ramirez" from September 16, 1992 through September 16, 1999, but does not state that Horton was an additional insured.

**19.** Horton alleges that Sphere Drake's coverage included much more than Ramirez's work, and extended to coverage for "property damage arising out of premises operations, completed operations ... and the work of independent contractors."

**20.** We emphasize that a motion for traditional summary judgment is not converted to a motion for no-evidence summary judgment simply by including the statement that the nonmovant "has not produced any evidence" of a particular fact prior to the date the motion was filed. Such an allegation is ambiguous, and may be read to complain of inadequate

discovery responses as easily as the absence of evidence. *See Michael v. Dyke*, 41 S.W.3d 746, 751 (Tex.App.-Corpus Christi 2001, no pet.) (where summary judgment motion does not unambiguously state it is filed under Rule 166a(I) and does not strictly comply with the requirements of that rule, it will be construed as a traditional summary judgment motion). Here, the remainder of Sphere Drake's motion for summary judgment makes it clear that Sphere Drake is complaining of Horton's failure to produce documentary evidence in response to discovery requests. Sphere Drake did not allege that evidence in another form did not exist. In fact, Horton supplemented its discovery with the names of two additional witnesses on the discovery deadline—coincidentally, the same day Sphere Drake filed its motion for summary judgment—and produced evidence of Ramirez's work by affidavit.

"failed to produce any specific documentation indicating the time, place and work specifically performed by Ramirez, undoubtedly because such documentation does not exist." Again, absent proof the Sphere Drake policy provided coverage only for damages caused by Ramirez's work, this argument does not form a basis for summary judgment.

In sum, Horton and Sphere Drake have each been at great pains to explain to the trial court and to this court how the "eight corners" rule affects this case, while in fact, only "four corners" were presented. While the parties have argued over what Sphere Drake's policies mean, they have neglected to demonstrate what the policies actually say. None of the briefs have cited to a Sphere Drake insurance policy in the record, nor has our review of the record uncovered the additional insured endorsement that is central to Horton's claims against Sphere Drake. In the absence of the policy, we can not perform the "eight corners" analysis required to determine the scope of Sphere Drake's defense obligations to Horton, or to determine the extent to which Sphere Drake agreed to indemnify Horton. Indeed, virtually none of Sphere Drake's arguments can be assessed without first ascertaining the terms of the policies.[21] We therefore agree with Horton that Sphere Drake has failed to meet its burden of proof, and accordingly reverse the order of April 20, 2005 granting Sphere Drake summary judgment, and remand that portion of the case for further proceedings consistent with this opinion.

## V. CONCLUSION

Because neither the factual allegations of the *Holmes* suit nor any reasonable inferences drawn from the *Holmes* pleading assert claims against Horton that are

insured by Markel, we affirm the judgment in favor of Markel on all claims asserted in Horton's original petition; however, because Markel did not move for summary judgment on the statutory and common law misrepresentation claims asserted in Horton's first supplemental petition, we reverse the judgment in favor of Markel as to those claims only. We therefore sever Horton's extracontractual claims against Markel for statutory and common law misrepresentation, and remand those claims to the trial court for further proceedings consistent with this opinion.

In addition, because the evidence offered by Sphere Drake in support of its motion for summary judgment is inadequate to support the judgment as a matter of law, we reverse the judgment in favor of Sphere Drake, sever those claims from Horton's contractual claims against Markel, and remand Horton's claims against Sphere Drake to the trial court for further proceedings consistent with this opinion.

---

21. Only Sphere Drake's argument concerning the Holmeses' lack of standing can be evaluated without reference to the policy.