Affirmed and Majority and Dissenting Opinions filed February 14, 2008








Affirmed and Majority and Dissenting Opinions filed February 14, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00662-CV

_______________

 

GENERAL STAR INDEMNITY CO., Appellant

 

V.

 

GULF COAST MARINE ASSOCIATES, INC., Appellee

                                                                                                                                               


On Appeal from the 152nd District Court

 Harris County, Texas

Trial Court Cause No. 2003-06535A

                                                                                                                                               


 

M A J O R I T Y   O P I N I O N








In this dispute regarding  an insurer=s duty to indemnify, we must
determine whether the insurer, General Star Indemnity Co. (AGeneral Star@), owed its insured, Gulf Coast
Marine Associates, Inc. (AGulf Coast@), a duty to defend in a suit involving a drill moving
operation.  In three issues, General Star contends the trial court erred in
determining that it owed Gulf Coast a duty to defend because the insurance
policy clearly and unambiguously excluded the damages alleged in the underlying
petition.  Because we conclude General Star owed Gulf Coast a duty to defend,
we affirm.

I.  Factual
and Procedural Background

The underlying lawsuit arose from a
rig moving operation off the coast of Texas in the Gulf of Mexico in
mid-February 2001.  As a result of the operation, the plaintiff and
non-operating working interest owner in an offshore oil well, Juniper Energy,
L.P. (AJuniper@), sued, among others, Gulf Coast. 
As is relevant here, in its petition, Juniper alleged that Gulf Coast=s negligence in mobilizing a Ajack-up drilling rig@ to the offshore well caused Juniper
damages.  In addition, Juniper, as a third party beneficiary to Gulf Coast=s insurance policy provided by General
Star, also sued General Star.[1]  Because
General Star refused to defend Gulf Coast, Gulf Coast filed a cross-complaint
against General Star, its insurance agent, and its insurance broker to
recover,  inter alia,  its defense costs.  The trial court severed Gulf
Coast=s claims into the instant suit. 

General Star and Gulf Coast filed
competing motions for summary judgment regarding the duty to defend.  General
Star asserted that Juniper=s petition failed to allege facts within the scope of
coverage; thus, it had no duty to defend.  Gulf Coast responded that because
Juniper alleged facts that were potentially within the scope of coverage,
General Star owed it a duty to defend and bore the burden to establish that any
potential damages were excluded from coverage.  On February 13, 2006, the trial
court denied General Star=s summary judgment motion and granted Gulf Coast=s motion for partial summary
judgment.  This partial summary judgment was incorporated into the trial court=s final judgment rendered on June 20,
2006, disposing of all parties and claims in this severed cause of action. 
General Star timely filed this appeal.








II.  Issues Presented

In its first issue, General Star
contends the trial court erred in finding a duty to defend because the factual
allegations in Juniper=s petition fell within a clear and unambiguous exclusion to
the policy coverage.  In its second issue, General Star asserts the trial court
erred in denying its summary judgment motion and granting Gulf Coast=s motion for partial summary
judgment.  Finally, in its third issue, General Star argues that the trial
court erred by failing to exclude an expert affidavit provided by Gulf Coast,
which described certain terms used in Juniper=s petition.

III.  Analysis

A.        Standard of Review

We review the trial court=s grant of summary judgment de novo. Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  De
novo review is also appropriately applied to determine whether an insurance
carrier owes its insured a duty to defend under an insurance policy.  See
Transp. Int=l Pool, Inc. v. Cont=l Ins. Co., 166 S.W.3d 781, 784 (Tex. App.CFort Worth 2005, no pet.); cf.
Huffhines v. State Farm Lloyds, 167 S.W.3d 493, 496 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 
Insurance policies are controlled by rules of interpretation and construction
applicable to contracts generally.  CU Lloyd=s of Tex. v. Hatfield, 126 S.W.3d 679, 682 (Tex. App.CHouston [14th Dist.] 2004, pet.
denied).  AIn determining the scope of coverage, we examine the policy as a whole to
ascertain the true intent of the parties.@  Utica Nat=l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 202 (Tex. 2004). 
But we strictly construe exceptions or limitations on liability against the
insurer and in favor of the insured.  See, e.g., Nat=l Union Fire Ins. Co. of Pittsburgh,
Pa. v. Hudson Energy Co., Inc., 811 S.W.2d 552, 555 (Tex. 1991).  








An insurer=s duty to defend its insured is
determined by the Aeight corners@ rule, which requires that we compare the allegations in the
petition filed against the insured with the coverage afforded by the insurance
policy.  King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002); D.R.
HortonBTex. Ltd. v. Markel Int=l Ins. Co., Ltd., No. 14-06-00486-CV, 2006 WL
3040756, at *2 (Tex. App.CHouston [14th Dist.] Oct. 26, 2006, pet. filed) (mem. op. on
reh=g).  A plaintiff=s factual allegations that
potentially support a covered claim are all that is needed to invoke the
insurer=s duty to defend, whereas the facts
actually established in the underlying suit control the duty to indemnify.[2] 
GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305,
308 (Tex. 2006).  If a petition does not allege facts within the scope of
coverage, an insurer is not legally required to defend a suit against its
insured.  Nat=l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs.
Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997) (per curiam); D.R. HortonBTex. Ltd., 2006 WL 3040756, at *2.  On the
other hand, an Ainsurer is obligated to defend a suit if the facts alleged in
the pleadings would give rise to any claim within the coverage of the policy.@  Utica Nat=l Ins. Co. of Tex., 141 S.W.3d at 201.  AWhen applying the eight corners rule,
we give the allegations in the petition a liberal interpretation.@  Merchs. Fast Motor Lines, Inc.,
939 S.W.2d at 141.  If the petition does not state facts sufficient to bring
the case clearly within or outside the insured=s coverage, the insurer is obligated
to defend if potentially there is a claim under the complaint within the
coverage of the insured=s policy.  See id.; Huffhines, 167 S.W.3d at
497. 








In reviewing the pleadings in light
of the insurance policy=s provisions, we focus on the petition=s factual allegations showing the
origin of the damages and not on the legal theories alleged.  Merchs. Fast
Motor Lines, Inc., 939 S.W.2d at 141; D.R. HortonBTex. Ltd., 2006 WL 3040756, at *2.  We resolve
any doubt regarding the duty to defend in favor of the insured.  King,
85 S.W.3d at 187; Merchs. Fast Motor Lines, Inc., 939 S.W.2d at 141.  We
will not, however, read facts into the petition, nor will we look outside of
the petition or imagine factual scenarios that might trigger coverage.  Merchs.
Fast Motor Lines, Inc., 939 S.W.2d at 142.  If an insurer has a duty to
defend its insured against any portion of the underlying suit, then the insurer
is required to defend the entire suit.  Stumph v. Dallas Fire Ins. Co.,
34 S.W.3d 722, 728 (Tex. App.CAustin 2000, no pet.); see also D.R. HortonBTex. Ltd., 2006 WL 3040756, at *2.  In
determining General Star=s issues, we first consider the facts alleged in the
underlying claim.

B.        The Underlying Petition

According
to Juniper=s petition in the underlying suit, Gulf Coast, among others, was
responsible for a botched rig moving operation in the Gulf of Mexico.  In its
petition, Juniper asserted that, on or about February 18, 2001, Gulf Coast was
hired by Juniper=s drilling contractor to move a Ajack-up drilling rig@ to a well off the Gulf of Mexico. 
While Gulf Coast was moving the rig, 

the mat of the jack[-]up rig contacted the well stub
or net protector.  The impact bent the well below the water bottom to such a
degree that remedial operations were required, including installation of a
caisson on the well.  Remediation and restoration expenses totaled
approximately US $935,886.45.

. . .

 

During the rig moving operation, the mat finger of the
rig passed over the net guard protecting the well. . . .

 

In this pleading, Juniper maintained
that during the operation, Gulf Coast grounded the jack-up rig.  Juniper
further asserted that a decision was made to investigate the well site with
divers, who 

found that the well was approximately 130' south of
the rig, the net guard [was] 30' south and 60' west of the rig.  The divers
confirmed the well stub appeared to be leaning plus or minus 5E to the southwest, which was later confirmed to be the damage [sic] to
the well. . . .

 

Juniper=s claims in the underlying suit were
premised on these facts.  Specifically, Juniper sought damages for its claims
including, but not limited to:  (a) restoration expenses totaling approximately
$935,886.45; (b) profit and production losses; (c) pre- and post-judgment
interest; (d) taxable court costs and expenses; (e) attorneys= fees; and (f) A[a]ll such other and further relief
to which [it] may be justly entitled.@ 








As a preliminary matter, General Star
contends that the only damages alleged in Juniper=s petition relate to the well and the
rig, both of which fall under the policy=s definition of Aunderground resources and equipment
hazard,@ and are explicitly excluded from
coverage.[3]  Gulf Coast,
on the other hand, argues that, construing the allegations in Juniper=s petition liberally, some of the
damages sought include damage to the net protector or stub as opposed to the
actual well.  We agree.








The eight corners rule does not require
us to ignore those inferences logically flowing from the facts alleged in a
petition.  See Allstate Ins. Co. v. Hallman, 159 S.W.3d 640, 645 (Tex.
2005) (inferring a profit motive from the insured=s leasing of her property for
limestone mining even though the pleadings made no reference to any pecuniary
interest).  An inference is a fact or proposition drawn from an admitted or
otherwise proven fact.[4]  Marshall
Field Stores, Inc. v. Gardiner, 859 S.W.2d 391, 400 (Tex. App.CHouston [14th Dist.] 1993, writ dism=d w.o.j.) (op. on reh=g). It is a logical consequence
flowing from a fact.  Id.  In other words, we may draw inferences from
the petition that may lead to a finding of coverage.  See Gomez v. Allstate
Tex. Lloyds Ins. Co., C S.W.3d C, 2007 WL 3203112, at *5 (Tex. App.CFort Worth Nov. 1, 2007, no pet. h.)
(concluding that reasonable inferences drawn from the facts alleged in the
underlying petition triggered an insurer=s duty to defend).

Here, Juniper=s petition included allegations that
the jack-up rig Acontacted the well stub or net protector.@  Additionally, Juniper alleged that
the net guard or net protector had been moved A30' south and 60' west of the rig.@  Finally, Juniper stated that ADivers confirmed that the well stub
was leaning . . . .@  Construing Juniper=s petition liberally in favor of the
insured, a reasonable inference may be drawn that the well stub or net
protector was damaged by the impact of the jack-up rig.  See id.;
see also Merchs. Fast Motor Lines, Inc., 939 S.W.2d at 141.  In fact,
General Star drew a similar inference from Juniper=s pleadings in drafting the factual
background section of its motion for summary judgment, stating: ADivers were then allegedly sent below
the surface of the water where they confirmed damage to the well and well
stub.@  (emphasis added).  We therefore conclude that some portion of the
damages Juniper sought could have included damage to the net protector or well
stub.[5]  We thus turn
to General Star=s argument that a stub and net protector fall within the
definition of Aunderground resources and equipment hazard@ excluded from the policy=s coverage. 

C.        Gulf Coast=s Policy

Gulf Coast=s Oil and Gas General Liability
policy states that General Star will provide a defense in any suit seeking
damages because of Abodily injury@ or Aproperty damage@ caused by an Aoccurrence@ taking place in the coverage area
during the coverage term.  In attempting to establish it had no duty to defend,
General Star relied primarily on the policy=s explicit exclusion of Aunderground resources and equipment
hazard.@  The policy defines Aunderground resources and equipment
hazard@ as Aproperty damage@ to:








A.        Oil, gas, water or other mineral substances
which have not been reduced to physical possession above the surface of the
earth or above the surface of any body of water;

B.        Any well, hole, formation, strata or area in
or through which exploration for or production of any substance is carried on;

C.        Any casing, pipe, bit, tool, pump or other
drilling or well servicing machinery or equipment located beneath the surface
of the earth in any such well or hole or beneath the surface of any body of
water.

 

General Star contends that the policy
exclusion at issue is broad enough to encompass any damage to the stub or net
protector because Aif the stub is not part of the well, it is part of the
drilling equipment because it marks the place for the well to be drilled@ and the net protector simply
protects the stub and the well from damage from fishing nets.  Gulf Coast
asserts that damage to either the stub or net protector is not explicitly
excluded from coverage because these items do not clearly fall within the
definition of Aunderground resources and equipment hazards.@  We consider these arguments next. 

D.        Comparison
of the Policy and the Petition

Pursuant to the eight-corners rule,
we compare the factual allegations of Juniper=s petition with the language of the
Gulf Coast policy to determine if the facts alleged by Juniper give rise to any
claim within the coverage of the policy.  See Utica Nat=l Ins. Co. of Tex., 141 S.W.3d at 201.   To resolve
this issue, we must consider whether damage to the Astub@ or Anet protector@ falls within the policy exclusion
for underground resources and equipment hazard.  But neither Juniper=s petition nor Gulf Coast=s policy explain what a Astub@ or Anet protector@ is; these terms are not included in
the policy=s definition of Aunderground resources and equipment hazard@ or otherwise defined by the policy. 
This obscurity brings us to General Star=s third issue, in which it complains
that the trial court erred in failing to exclude the expert affidavit provided
by Gulf Coast.

1.         Well
Stub and Net Protector








Generally, as with any contract,
extrinsic evidence may be admissible to give the words of an insurance policy a
meaning consistent with that to which they are reasonably susceptible, i.e.,
to interpret contractual terms.  Nat=l Union Fire Ins. Co. of Pittsburgh,
Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 520B21 (Tex. 1995) (per curiam).  Here, General Star correctly
points out that Gulf Coast=s expert affidavit defines terms that relate to Juniper=s pleadings, rather than to the
policy=s construction.[6] 
Gulf Coast has identified no authority providing that such extrinsic evidence
is appropriate to give the words of a third-party petition a meaning consistent
with that to which they are reasonably susceptible.  We therefore conclude that
the expert=s definition of Awell stub@ and Anet protector@ provided by Gulf Coast=s affidavit is not pertinent to a
determination of General Star=s duty to defend under the eight-corners rule.  But summary
judgment in favor of Gulf Coast was nevertheless appropriate if the factual
allegations in Juniper=s petition triggered General Star=s duty to defend.[7]









Based on the allegations in Juniper=s pleadings, we conclude that a Astub@ and Anet protector@ mark and protect the location of a
well.  For example, the angle at which the stub was leaning was reflected in
the damage caused to the well; based on these facts, we may infer that a stub
is some sort of object projecting out of a well, used to mark or identify the
well or the well=s location.[8]  A net
protector or guard, based on the allegations in Juniper=s petition,[9]
is an object that protects either the well or the well stub.  We next determine
whether damage to the well stub or net protector is excluded from the policy.

2.         The Underground Resources and Equipment Hazard
Exclusion

Gulf Coast asserts that the underground
resources and hazard exclusion applies only to:  (a) a well itself (under
provision B, supra) or (b) any drilling or well-servicing equipment or
machinery (under provision C, supra).  Gulf Coast contends that because
neither a well stub nor net protector fits into these categories, damage to
either of these items is not outside the scope of coverage.  General Star does
not dispute Gulf Coast=s construction of the clause, but insists that these two
items are part of the well itself or drilling or well servicing equipment:  AThe stub displays the location of the
well.  The net protector protects the stub and the well to which it is attached
from damage and obliteration.@  According to General Star, because these items are
necessary to locating and re-drilling a capped well, they are Aobviously machinery and equipment
used in oil drilling and oil well servicing.  They are excluded.@   

But whether an object projecting from
or protecting a well is part of the well itself is unclear.  Likewise, whether
either of these objects is drilling or well servicing equipment is equally
unclear.  Instead, as noted above, these items appear to be location and
protection devices for an oil well.  Although such devices undoubtedly serve a
vital function in the oil industry, we cannot say on this record that they fall
into the category of well servicing or drilling equipment.[10] 









In sum, we must strictly construe the
exclusionary clause against General Star and in favor of Gulf Coast.[11] 
See Hudson Energy Co., Inc., 811 S.W.2d at 555.  Furthermore, any doubts
regarding the duty to defend must be resolved in favor of Gulf Coast.  See
King, 85 S.W.3d at 187; Merchs. Fast Motor Lines, Inc., 939 S.W.2d
at 141.  Resolving any doubts in favor of the duty to defend and strictly
construing this exclusionary clause against General Star, we conclude that the
facts alleged in Juniper=s petition indicate a potential claim for damages to
the well stub or net protector, which falls within the coverage of Gulf Coast=s policy.  See Merchs. Fast Motor
Lines, Inc., 939 S.W.2d at 141; Huffhines, 167 S.W.3d at 497.  We
therefore conclude that General Star owed Gulf Coast a duty to defend, and we
overrule General Star=s first and second issues.

IV.  Conclusion

We hold that the underlying petition
alleged facts from which damage to the Awell stub@ and Anet protector@ may be logically inferred.  Without
regard to Gulf Coast=s expert affidavit, we therefore determine that General Star
had a duty to defend Gulf Coast in the underlying dispute because these items
are not clearly excluded from the policy=s coverage.  Accordingly, we overrule
General Star=s issues and affirm the judgment of the trial court.

 

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Majority and
Dissenting Opinions filed February 14, 2008.

 

Panel consists of Justices Yates,
Fowler, and Guzman. (Yates, J., dissenting).









[1]  According to its petition, Juniper sued General Star
under Louisiana=s Direct Action Statute.  





[2]  Thus, the duty to defend is generally broader than
the duty to indemnify.  GuideOne Elite Ins. Co. v. Fielder Rd. Baptist
Church, 197 S.W.3d 305, 310 (Tex. 2006).





[3]  General Star also argues that the statements in
Juniper=s pleadings alleging that the rig Acontacted@
the well stub and net protector were simply Aallegations
. . . made by way of factual background . . . not tied to a particular cause of
action,@ citing C.O. Morgan Lincoln-Mercury, Inc. v.
Vigilant Ins. Co. as support for this proposition.  521 S.W.2d 318, 321
(Tex. Civ. App.CFort Worth 1975, no writ).  But this case is readily
distinguishable because the insurance policy at issue there provided coverage
for libel, slander, or defamation, and the underlying petition involved a suit
for conversion.  Id. at 320B21. 
The Second Court of Appeals concluded that the allegations in the underlying
petition concerning Athreats and harsh words@ were simply facts leading up to the conversion, and that the suit was
not one for Alibel, slander, or defamation of character.@ Id. at 321.  Here, to the contrary, the
underlying petition involves, inter alia, a claim for property damage
due to negligence.  Thus, the fact that the rig contacted the well stub and net
protector is not simply an Aallegation made
by way of factual background,@ but instead an
allegation that describes the nature and extent of the damages caused by Gulf
Coast=s alleged negligence.





[4]  In determining an insurer=s duty to defend, we consider the facts alleged
without regard to the truth of those allegations.  Fielder Rd. Baptist
Church, 197 S.W.3d at 308.





[5]  Our dissenting colleague does not read Juniper=s petition to factually allege a claim for specific
damage to the well stub.  But this review of the petition does not comport with
the general rules that allegations in a petition must be liberally interpreted
in favor of the insured, and any doubts as to whether the insurer has a duty to
defend must be resolved in the insured=s
favor.  See King, 85 S.W.3d at 186; Merchs. Fast Motor Lines, Inc.,
939 S.W.2d at 141. 





[6]  Specifically, the affidavit provided by Gulf Coast
defines the terms Astub@ and Anet protector.@ 
Although General Star objected to this affidavit, it did not obtain an
explicit  ruling on this objection. We do not presume that objections to
summary judgment evidence were overruled when a trial court grants a summary
judgment.  Seidner v. Citibank (S.D.) N.A., 201 S.W.3d 332, 335 n.2
(Tex. App.CHouston [14th Dist.] 2006, pet. denied).   But an
objection to the substance of a summary judgment affidavit, rather than a
defect in the form, is not waived by failure to obtain a ruling from the trial
court on the objection.  See, e.g., Wedewitz v. Montgomery,
951 S.W.2d 464, 466 (Tex. 1997) (AConclusory
statements by an expert are insufficient to support or defeat summary judgment.@).  Here, General Star asserts that the expert
affidavit contained opinions and conclusory statements and was therefore
incompetent summary judgment evidence.  We need not determine whether the
expert affidavit proffered by Gulf Coast is incompetent summary judgment
evidence, however, because, as noted above, this affidavit was not necessary to
the trial court=s ruling on the parties= motions for summary judgment. 





[7]  Thus, General Star=s third issue is not dispositive of this appeal, and we do not reach 
it.  See Tex. R. App. P. 44.1 (providing that
reversal of a  trial court=s judgment is
only appropriate when the error complained of probably caused the rendition of
an improper judgment). 





[8]  Juniper describes difficulty in locating the well by
sonar; from the context of the description of the rig moving operation, it is
apparent that the well stub demarked the location of the well to which Gulf
Coast was attempting to mobilize the jack-up rig. 





[9]  Juniper refers to the Anet guard@ as an item Aprotecting
the well.@





[10]  Likewise, a map of an oil field demarking the
location of an oil well would also serve a vital function in the oil industry,
but it stretches credulity to categorize a map as Awell drilling or servicing equipment.@ 





[11]  Moreover, we must adopt the construction of an
exclusionary clause urged by the insured so long as it is not unreasonable.  See
Utica Nat=l Ins. Co. of Tex., 141 S.W.3d at 202.  Gulf Coast=s
interpretation C that, as is relevant here, the policy excludes
coverage only for damage to the well itself or for well drilling or servicing
equipment C is reasonable.