**GENERAL STAR INDEMNITY CO., Appellant,**

v.

**GULF COAST MARINE ASSOCIATES, INC., Appellee.**

**No. 14–06–00662–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 14, 2008.

Beth D. Bradley, John C. Tollefson, Dallas, for appellant.

George Frederick May, Jeffery B. Kaiser, Kelly D. Stephens, Houston, for appellee.

Panel consists of Justices YATES, FOWLER, and GUZMAN.

## MAJORITY OPINION

EVA M. GUZMAN, Justice.

In this dispute regarding an insurer's duty to indemnify, we must determine whether the insurer, General Star Indemnity Co. ("General Star"), owed its insured, Gulf Coast Marine Associates, Inc. ("Gulf Coast"), a duty to defend in a suit involving a drill moving operation. In three issues, General Star contends the trial court erred in determining that it owed Gulf Coast a duty to defend because the insurance policy clearly and unambiguously excluded the damages alleged in the underlying petition. Because we conclude General Star owed Gulf Coast a duty to defend, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying lawsuit arose from a rig moving operation off the coast of Texas in the Gulf of Mexico in mid-February 2001. As a result of the operation, the plaintiff and non-operating working interest owner in an offshore oil well, Juniper Energy, L.P. ("Juniper"), sued, among others, Gulf Coast. As is relevant here, in its petition, Juniper alleged that Gulf Coast's negligence in mobilizing a "jack-up drilling rig" to the offshore well caused Juniper damages. In addition, Juniper, as a third party beneficiary to Gulf Coast's insurance policy provided by General Star, also sued General Star.[1] Because General Star refused to defend Gulf Coast, Gulf Coast

filed a cross-complaint against General Star, its insurance agent, and its insurance broker to recover, *inter alia*, its defense costs. The trial court severed Gulf Coast's claims into the instant suit.

General Star and Gulf Coast filed competing motions for summary judgment regarding the duty to defend. General Star asserted that Juniper's petition failed to allege facts within the scope of coverage; thus, it had no duty to defend. Gulf Coast responded that because Juniper alleged facts that were potentially within the scope of coverage, General Star owed it a duty to defend and bore the burden to establish that any potential damages were excluded from coverage. On February 13, 2006, the trial court denied General Star's summary judgment motion and granted Gulf Coast's motion for partial summary judgment. This partial summary judgment was incorporated into the trial court's final judgment rendered on June 20, 2006, disposing of all parties and claims in this severed cause of action. General Star timely filed this appeal.

## II. ISSUES PRESENTED

In its first issue, General Star contends the trial court erred in finding a duty to defend because the factual allegations in Juniper's petition fell within a clear and unambiguous exclusion to the policy coverage. In its second issue, General Star asserts the trial court erred in denying its summary judgment motion and granting Gulf Coast's motion for partial summary judgment. Finally, in its third issue, General Star argues that the trial court erred by failing to exclude an expert affidavit provided by Gulf Coast, which described certain terms used in Juniper's petition.

---

1. According to its petition, Juniper sued General Star under Louisiana's Direct Action Statute.

## III. Analysis

### A. Standard of Review

We review the trial court's grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). De novo review is also appropriately applied to determine whether an insurance carrier owes its insured a duty to defend under an insurance policy. *See Transp. Int'l Pool, Inc. v. Cont'l Ins. Co.,* 166 S.W.3d 781, 784 (Tex. App.-Fort Worth 2005, no pet.); *cf. Huffhines v. State Farm Lloyds,* 167 S.W.3d 493, 496 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Insurance policies are controlled by rules of interpretation and construction applicable to contracts generally. *CU Lloyd's of Tex. v. Hatfield,* 126 S.W.3d 679, 682 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). "In determining the scope of coverage, we examine the policy as a whole to ascertain the true intent of the parties." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.,* 141 S.W.3d 198, 202 (Tex.2004). But we strictly construe exceptions or limitations on liability against the insurer and in favor of the insured. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc.,* 811 S.W.2d 552, 555 (Tex.1991).

An insurer's duty to defend its insured is determined by the "eight corners" rule, which requires that we compare the allegations in the petition filed against the insured with the coverage afforded by the insurance policy. *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex.2002); *D.R. Horton–Tex. Ltd. v. Markel Int'l Ins. Co., Ltd.,* No. 14–05–00486–CV, 2006 WL 3040756, at *2 (Tex. App.-Houston [14th Dist.] Oct. 26, 2006, pet. filed) (mem. op. on reh'g). A plaintiff's factual allegations that potentially support a covered claim are all that is needed to invoke the insurer's duty to defend, whereas the facts actually established in the underlying suit control the duty to indemnify.[2] *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 308 (Tex.2006). If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997) (per curiam); *D.R. Horton–Tex. Ltd.,* 2006 WL 3040756, at *2. On the other hand, an "insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy." *Utica Nat'l Ins. Co. of Tex.,* 141 S.W.3d at 201. "When applying the eight corners rule, we give the allegations in the petition a liberal interpretation." *Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d at 141. If the petition does not state facts sufficient to bring the case clearly within or outside the insured's coverage, the insurer is obligated to defend if *potentially* there is a claim under the complaint within the coverage of the insured's policy. *See id.; Huffhines,* 167 S.W.3d at 497.

In reviewing the pleadings in light of the insurance policy's provisions, we focus on the petition's factual allegations showing the origin of the damages and not on the legal theories alleged. *Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d at 141; *D.R. Horton–Tex. Ltd.,* 2006 WL 3040756, at *2. We resolve any doubt regarding the duty to defend in favor of the insured. *King,* 85 S.W.3d at 187; *Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d at 141. We will not, however, read facts into the petition, nor will we look outside of the petition or imagine factual

---

2. Thus, the duty to defend is generally broader than the duty to indemnify. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 310 (Tex.2006).

scenarios that might trigger coverage. *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 142. If an insurer has a duty to defend its insured against any portion of the underlying suit, then the insurer is required to defend the entire suit. *Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 728 (Tex.App.-Austin 2000, no pet.); *see also D.R. Horton–Tex. Ltd.*, 2006 WL 3040756, at *2. In determining General Star's issues, we first consider the facts alleged in the underlying claim.

## B. The Underlying Petition

According to Juniper's petition in the underlying suit, Gulf Coast, among others, was responsible for a botched rig moving operation in the Gulf of Mexico. In its petition, Juniper asserted that, on or about February 18, 2001, Gulf Coast was hired by Juniper's drilling contractor to move a "jack-up drilling rig" to a well off the Gulf of Mexico. While Gulf Coast was moving the rig,

> the mat of the jack[-]up rig contacted the well stub or net protector. The impact bent the well below the water bottom to such a degree that remedial operations were required, including installation of a caisson on the well. Remediation and restoration expenses totaled approximately U.S. $935,886.45.

. . .

> During the rig moving operation, the mat finger of the rig passed over the net guard protecting the well. . . .

In this pleading, Juniper maintained that during the operation, Gulf Coast grounded the jack-up rig. Juniper further asserted that a decision was made to investigate the well site with divers, who

> found that the well was approximately 130′ south of the rig, the net guard [was] 30′ south and 60′ west of the rig. The divers confirmed the well stub appeared to be leaning plus or minus 5E to the southwest, which was later confirmed to be the damage [sic] to the well. . . .

Juniper's claims in the underlying suit were premised on these facts. Specifically, Juniper sought damages for its claims including, but not limited to: (a) restoration expenses totaling approximately $935,886.45; (b) profit and production losses; (c) pre- and post-judgment interest; (d) taxable court costs and expenses; (e) attorneys' fees; and (f) "[a]ll such other and further relief to which [it] may be justly entitled."

As a preliminary matter, General Star contends that the only damages alleged in Juniper's petition relate to the well and the rig, both of which fall under the policy's definition of "underground resources and equipment hazard," and are explicitly excluded from coverage.[3] Gulf Coast, on the

---

**3.** General Star also argues that the statements in Juniper's pleadings alleging that the rig "contacted" the well stub and net protector were simply "allegations . . . made by way of factual background . . . not tied to a particular cause of action," citing *C.O. Morgan Lincoln–Mercury, Inc. v. Vigilant Ins. Co.* as support for this proposition. 521 S.W.2d 318, 321 (Tex.Civ.App.-Fort Worth 1975, no writ). But this case is readily distinguishable because the insurance policy at issue there provided coverage for libel, slander, or defamation, and the underlying petition involved a suit for conversion. *Id.* at 320–21. The Second Court of Appeals concluded that the allegations in the underlying petition concerning "threats and harsh words" were simply facts leading up to the conversion, and that the suit was not one for "libel, slander, or defamation of character." *Id.* at 321. Here, to the contrary, the underlying petition involves, *inter alia*, a claim for property damage due to negligence. Thus, the fact that the rig contacted the well stub and net protector is not simply an "allegation made by way of factual background," but instead an allegation that describes the nature and extent of the damages caused by Gulf Coast's alleged negligence.

other hand, argues that, construing the allegations in Juniper's petition liberally, some of the damages sought include damage to the net protector or stub as opposed to the actual well. We agree.

The eight corners rule does not require us to ignore those inferences logically flowing from the facts alleged in a petition. *See Allstate Ins. Co. v. Hallman,* 159 S.W.3d 640, 645 (Tex.2005) (inferring a profit motive from the insured's leasing of her property for limestone mining even though the pleadings made no reference to any pecuniary interest). An inference is a fact or proposition drawn from an admitted or otherwise proven fact.[4] *Marshall Field Stores, Inc. v. Gardiner,* 859 S.W.2d 391, 400 (Tex.App.-Houston [1st Dist.] 1993, writ dism'd w.o.j.) (op. on reh'g). It is a logical consequence flowing from a fact. *Id.* In other words, we may draw inferences from the petition that may lead to a finding of coverage. *See Gomez v. Allstate Tex. Lloyds Ins. Co.,* 241 S.W.3d 196, 204–05 (Tex.App.-Fort Worth 2007, no pet. h.) (concluding that reasonable inferences drawn from the facts alleged in the underlying petition triggered an insurer's duty to defend).

Here, Juniper's petition included allegations that the jack-up rig "contacted the well stub or net protector." Additionally, Juniper alleged that the net guard or net protector had been moved "30′ south and 60′ west of the rig." Finally, Juniper stated that "Divers confirmed that the well stub was leaning . . . ." Construing Juniper's petition liberally in favor of the insured, a reasonable inference may be

drawn that the well stub or net protector was damaged by the impact of the jack-up rig. *See id.; see also Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d at 141. In fact, General Star drew a similar inference from Juniper's pleadings in drafting the factual background section of its motion for summary judgment, stating: "Divers were then allegedly sent below the surface of the water where they confirmed damage to the well and *well stub.*" (emphasis added). We therefore conclude that some portion of the damages Juniper sought could have included damage to the net protector or well stub.[5] We thus turn to General Star's argument that a stub and net protector fall within the definition of "underground resources and equipment hazard" excluded from the policy's coverage.

**C. Gulf Coast's Policy**

Gulf Coast's Oil and Gas General Liability policy states that General Star will provide a defense in any suit seeking damages because of "bodily injury" or "property damage" caused by an "occurrence" taking place in the coverage area during the coverage term. In attempting to establish it had no duty to defend, General Star relied primarily on the policy's explicit exclusion of "underground resources and equipment hazard." The policy defines "underground resources and equipment hazard" as "property damage" to:

A. Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;

---

4. In determining an insurer's duty to defend, we consider the facts alleged without regard to the truth of those allegations. *Fielder Rd. Baptist Church,* 197 S.W.3d at 308.

5. Our dissenting colleague does not read Juniper's petition to factually allege a claim for specific damage to the well stub. But this

review of the petition does not comport with the general rules that allegations in a petition must be liberally interpreted in favor of the insured, and any doubts as to whether the insurer has a duty to defend must be resolved in the insured's favor. *See King,* 85 S.W.3d at 186; *Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d at 141.

B. Any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on;

C. Any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water.

General Star contends that the policy exclusion at issue is broad enough to encompass any damage to the stub or net protector because "if the stub is not part of the well, it is part of the drilling equipment because it marks the place for the well to be drilled" and the net protector simply protects the stub and the well from damage from fishing nets. Gulf Coast asserts that damage to either the stub or net protector is not explicitly excluded from coverage because these items do not clearly fall within the definition of "underground resources and equipment hazards." We consider these arguments next.

**D. Comparison of the Policy and the Petition**

Pursuant to the eight-corners rule, we compare the factual allegations of Juniper's petition with the language of the Gulf Coast policy to determine if the facts alleged by Juniper give rise to any claim within the coverage of the policy. *See Utica Nat'l Ins. Co. of Tex.*, 141 S.W.3d at

201. To resolve this issue, we must consider whether damage to the "stub" or "net protector" falls within the policy exclusion for underground resources and equipment hazard. But neither Juniper's petition nor Gulf Coast's policy explain what a "stub" or "net protector" is; these terms are not included in the policy's definition of "underground resources and equipment hazard" or otherwise defined by the policy. This obscurity brings us to General Star's third issue, in which it complains that the trial court erred in failing to exclude the expert affidavit provided by Gulf Coast.

*1. Well Stub and Net Protector*

Generally, as with any contract, extrinsic evidence may be admissible to give the words of an insurance policy a meaning consistent with that to which they are reasonably susceptible, *i.e.*, to interpret *contractual terms*. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520–21 (Tex.1995) (per curiam). Here, General Star correctly points out that Gulf Coast's expert affidavit defines terms that relate to Juniper's pleadings, rather than to the policy's construction.[6] Gulf Coast has identified no authority providing that such extrinsic evidence is appropriate to give the words of a third-party petition a meaning consistent with that to which they are reasonably susceptible. We therefore conclude that

---

**6.** Specifically, the affidavit provided by Gulf Coast defines the terms "stub" and "net protector." Although General Star objected to this affidavit, it did not obtain an explicit ruling on this objection. We do not presume that objections to summary judgment evidence were overruled when a trial court grants a summary judgment. *Seidner v. Citibank (S.D.) N.A.*, 201 S.W.3d 332, 335 n. 2 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). But an objection to the substance of a summary judgment affidavit, rather than a defect in the form, is not waived by failure to obtain a ruling from the trial court on the

objection. *See, e.g., Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex.1997) ("Conclusory statements by an expert are insufficient to support or defeat summary judgment."). Here, General Star asserts that the expert affidavit contained opinions and conclusory statements and was therefore incompetent summary judgment evidence. We need not determine whether the expert affidavit proffered by Gulf Coast is incompetent summary judgment evidence, however, because, as noted above, this affidavit was not necessary to the trial court's ruling on the parties' motions for summary judgment.

the expert's definition of "well stub" and "net protector" provided by Gulf Coast's affidavit is not pertinent to a determination of General Star's duty to defend under the eight-corners rule. But summary judgment in favor of Gulf Coast was nevertheless appropriate if the factual allegations in Juniper's petition triggered General Star's duty to defend.[7]

■ Based on the allegations in Juniper's pleadings, we conclude that a "stub" and "net protector" mark and protect the location of a well. For example, the angle at which the stub was leaning was reflected in the damage caused to the well; based on these facts, we may infer that a stub is some sort of object projecting out of a well, used to mark or identify the well or the well's location.[8] A net protector or guard, based on the allegations in Juniper's petition,[9] is an object that protects either the well or the well stub. We next determine whether damage to the well stub or net protector is excluded from the policy.

### 2. The Underground Resources and Equipment Hazard Exclusion

Gulf Coast asserts that the underground resources and hazard exclusion applies only to: (a) a well itself (under provision B, *supra*) or (b) any drilling or well-servicing equipment or machinery (under provi-

sion C, *supra*). Gulf Coast contends that because neither a well stub nor net protector fits into these categories, damage to either of these items is not outside the scope of coverage. General Star does not dispute Gulf Coast's construction of the clause, but insists that these two items are part of the well itself or drilling or well servicing equipment: "The stub displays the location of the well. The net protector protects the stub and the well to which it is attached from damage and obliteration." According to General Star, because these items are necessary to locating and re-drilling a capped well, they are "obviously machinery and equipment used in oil drilling and oil well servicing. They are excluded."

But whether an object projecting from or protecting a well is part of the well itself is unclear. Likewise, whether either of these objects is drilling or well servicing equipment is equally unclear. Instead, as noted above, these items appear to be location and protection devices for an oil well. Although such devices undoubtedly serve a vital function in the oil industry, we cannot say on this record that they fall into the category of well servicing or drilling equipment.[10]

■ In sum, we must strictly construe the exclusionary clause against General Star and in favor of Gulf Coast.[11] *See*

---

7. Thus, General Star's third issue is not dispositive of this appeal, and we do not reach it. *See* TEX.R.APP. P. 44.1 (providing that reversal of a trial court's judgment is only appropriate when the error complained of probably caused the rendition of an improper judgment).

8. Juniper describes difficulty in locating the well by sonar; from the context of the description of the rig moving operation, it is apparent that the well stub demarked the location of the well to which Gulf Coast was attempting to mobilize the jack-up rig.

9. Juniper refers to the "net guard" as an item "protecting the well."

10. Likewise, a map of an oil field demarking the location of an oil well would also serve a vital function in the oil industry, but it stretches credulity to categorize a map as "well drilling or servicing equipment."

11. Moreover, we must adopt the construction of an exclusionary clause urged by the insured so long as it is not unreasonable. *See Utica Nat'l Ins. Co. of Tex.*, 141 S.W.3d at 202. Gulf Coast's interpretation—that, as is relevant here, the policy excludes coverage only for damage to the well itself or for well drilling or servicing equipment—is reasonable.

*Hudson Energy Co., Inc.,* 811 S.W.2d at 555. Furthermore, any doubts regarding the duty to defend must be resolved in favor of Gulf Coast. *See King,* 85 S.W.3d at 187; *Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d at 141. Resolving any doubts in favor of the duty to defend and strictly construing this exclusionary clause against General Star, we conclude that the facts alleged in Juniper's petition indicate a *potential* claim for damages to the well stub or net protector, which falls within the coverage of Gulf Coast's policy. *See Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d at 141; *Huffhines,* 167 S.W.3d at 497. We therefore conclude that General Star owed Gulf Coast a duty to defend, and we overrule General Star's first and second issues.

### IV. CONCLUSION

We hold that the underlying petition alleged facts from which damage to the "well stub" and "net protector" may be logically inferred. Without regard to Gulf Coast's expert affidavit, we therefore determine that General Star had a duty to defend Gulf Coast in the underlying dispute because these items are not clearly excluded from the policy's coverage. Accordingly, we overrule General Star's issues and affirm the judgment of the trial court.

YATES, J., dissenting.

LESLIE B. YATES, Justice, dissenting.

I respectfully disagree with the majority's conclusion that General Star owed Gulf Coast a duty to defend. Specifically, I disagree with the majority's conclusion that the petition in the underlying lawsuit alleges facts within the scope of coverage of the insurance policy.

The majority is correct that in reviewing a petition under an eight-corners analysis, we resolve any doubt regarding coverage in favor of the insured. *See Nat'l Union*

*Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997). However, this does not mean that we presume coverage in the absence of statements in the petition creating or disavowing coverage. To the contrary, if a pleading does not allege facts that would create coverage under the policy, an insurer is not legally required to defend the suit against its insured. *Id.* at 141. Stated conversely, when a pleading only alleges facts excluded by the policy, the insurer has no duty to defend. *Fid. & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex.1982). We will not read facts into the pleadings or imagine factual scenarios in order to find covered claims. *Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d at 142.

A fair reading of the Juniper petition reveals that no claim is made for any asserted damage to the well stub or net protector. All references to damages in the petition occur in context of damage to the well itself. The facts section repeatedly alleges damage to the well: "the mat of the jackup rig .... bent *the well,*" "remedial operations were required, including installation of a caisson on *the well,*" "the Gulf Coast mover was warned of potential *damage to the well,*" "*the well stub appeared to be leaning plus or minus 5—to the southwest, which was later confirmed to be the damage to the well described above,*" and "*damage to Plaintiff's well* was already sustained" (emphasis added). The causes of action section twice claims damage to the well—"the PRIDE ARKANSAS striking *Plaintiff's well* " and "*Plaintiff's well required repairs, restoration and remediation* "—but makes no mention of the well stub or net protector. The damages section details restoration expenses that were asserted earlier in the petition in connection with damage to the well. In reviewing the underlying pleadings, the court must focus on the factual

allegations that show the origin of the damages rather than the legal theories alleged. *Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d at 141. Because I do not read Juniper's petition as factually alleging a claim for damage to the well stub, I would reverse the trial court's judgment and render judgment in favor of General Star.