# Court of Appeals
## Tenth Appellate District of Texas

### 10-23-00250-CV

Admiral Insurance Company,
Appellant

v.

Lippert Components, Inc., Kinro Texas Inc., Kinro, Inc.,
LCI Industries f/k/a Drew Industries, Inc.,
Appellees

On appeal from the
40th District Court of Ellis County, Texas
Judge Bob Carroll, presiding
Trial Court Cause No. 111895

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

### MEMORANDUM OPINION

This is an insurance coverage case related to an underlying personal injury lawsuit filed by Quinton Williams against Lippert Components, Inc. (Lippert), and its subsidiaries Kinro, Inc., Kinro Texas, Inc. (Kinro), and LCI Industries as successor in interest to Drew Industries, Inc. (LCI).[1]  The case

---

[1] Other defendants that are not parties to this appeal were named in the original, amended, and/or supplemental petitions filed by Williams in the trial court.

involves competing claims for declaratory relief regarding whether Admiral Insurance Company (Admiral) had a duty to defend Lippert, Kinro, and LCI against Williams's underlying lawsuit.

## A. Background

Prior to Williams's injury, Admiral had issued a commercial general liability insurance policy to Lippert, covering Lippert, Kinro, and Drew Industries, Inc., along with other entities. The policy provided general liability coverage for claims that sought damages due to bodily injuries. Admiral denied the insureds a defense to Williams's lawsuit, claiming the policy's "Injury to Workers Exclusion" precluded coverage.

Admiral filed an original petition and request for declaratory judgment against Lippert, Kinro, LCI, and non-parties to this appeal Liberty Mutual Insurance Company (Liberty), and Quinton Williams. In Admiral's lawsuit, it sought, among other relief, a declaration that it owed no duty to defend or indemnify the insureds under the commercial general liability policy with respect to the underlying lawsuit. In response, Lippert, Kinro, and LCI filed a counterclaim for declaratory judgment in which they sought a declaration that the insureds were entitled to insurance coverage under the commercial general liability policy for the defense and indemnification of the underlying lawsuit.

Pursuant to a Rule 11 agreement, the parties filed cross motions for partial summary judgment on their competing claims for declaratory judgment solely on the issue of whether Williams's operative petition, including all subsequent amended or supplemental petitions filed by Williams in his underlying lawsuit, invoked Admiral's potential duty to defend the insureds against Williams's claims.

The trial court denied Admiral's motion for partial summary judgment, granted Lippert's motion for partial summary judgment, and found that Admiral owed a duty to defend based on Williams's allegations because the trial court could not find that the allegations unambiguously foreclosed the possibility of coverage, as required to excuse Admiral's duty to defend. The trial court also excluded Admiral's extrinsic "work status" evidence that was submitted to support Admiral's assertion Williams's claims were not covered because the policy's "Injury to Workers Exclusion" precluded coverage.

Admiral, Lippert, Kinro, and LCI filed an unopposed joint motion to sever the trial court's declaratory judgments on the duty to defend issue so that the ruling on Admiral's duty to defend would be immediately appealable. The trial court granted the motion to sever, and Admiral appealed the trial court's order granting Lippert's motion for partial summary judgment and denying Admiral's motion for partial summary judgment. Admiral contends the trial

court erred in (1) granting Lippert's motion for partial summary judgment, and in denying Admiral's motion for partial summary judgment, and (2) granting Lippert's motion to strike Admiral's extrinsic summary judgment evidence. We will affirm.

## B. Issue One

### 1. Standard of Review

"We review an order granting summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference in the nonmovant's favor." *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). "When reviewing a traditional motion for summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law." *James v. Young*, No. 10-17-00346-CV, 2018 WL 1631636, at *2 (Tex. App.—Waco Apr. 4, 2018, no pet.) (mem. op.) (citing TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002)). Once the movant produces sufficient evidence to establish the right to summary judgment, the nonmovant must present evidence sufficient to raise a fact issue. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). When both sides move for summary judgment and the trial

court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)).

2. Applicable Law

An insurer's duty to defend is determined by applying the eight-corners rule that looks to the third-party plaintiff's petition, which is considered in light of the policy provisions, without regard to the truth or falsity of the allegations contained in the pleadings. *See Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). A third-party plaintiff's factual allegations that potentially support a covered claim are all that is needed to invoke the insurer's duty to defend. *See Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 471 (Tex. 2022). An insurer's obligation to defend can be invoked even if the allegations in the third-party plaintiff's petition are groundless, false, or fraudulent. *See Zurich Am. Ins. Co.*, 268 S.W.3d at 491. "However, we only defer to a [third-party plaintiff's] characterization of factual allegations, not legal theories or conclusions." *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370

S.W.3d 377, 380 (Tex. 2012). "In reviewing the [third-party plaintiff's] pleadings and making the foregoing determinations, courts look to the factual allegations showing the origin of the damages claimed, not to the legal theories or conclusions alleged." *Ewing Const. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014) (citing *Evanston*, 370 S.W.3d at 380; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)). "It is not the cause of action alleged which determines coverage but the facts giving rise to the alleged actionable conduct." *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App.-Houston [14th Dist.] 1993, writ denied). "If the [third-party plaintiff's] pleadings do not contain factual allegations sufficient to bring the case clearly within or without the coverage terms, the general rule is that the insurer is obligated to defend if there is any potential claim under the pleadings that falls within the coverage of the policy." *GEICO Gen. Ins. Co.*, v. Austin Power Inc., 357 S.W.3d 821, 824 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). If the underlying third-party plaintiff's petition is ambiguous, the court may not read facts into the pleadings, look outside the pleadings, or imagine factual scenarios which might invoke coverage. *Id*. Even easily ascertained facts outside the third-party plaintiff's pleadings are not ordinarily material to the determination of whether the duty to defend exists. *Weingarten Realty Mgmt. Co. v. Liberty*

*Mut. Fire Ins. Co.*, 343 S.W.3d 859, 862 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). "The duty to defend is not affected by facts ascertained before suit, developed in the course of litigation, or by the ultimate outcome of the suit." *Zurich Am. Ins. Co.,* 268 S.W.3d at 491 (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex. 1997); *see also* 14 COUCH ON INSURANCE § 200:19 (noting that duty to defend is unaffected by "what the parties know or believe the alleged facts to be, the outcome of the underlying case, or the merits of the claim")).

"However, the eight-corners rule does not require us to ignore those inferences logically flowing from the facts alleged in the petition." *GEICO Gen. Ins. Co.*, 357 S.W.3d at 824 (citing *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., Inc.*, 252 S.W.3d 450, 456 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)). An inference is a fact or proposition drawn from an admitted or otherwise proven fact that is a logical consequence flowing from a fact. *Gen. Star Indem. Co.*, 252 S.W.3d at 456. "In other words, we may draw inferences from the petition that may lead to a finding of coverage." *Id.*

As to the policy, if a term is susceptible to more than one reasonable interpretation, we must resolve that uncertainty in favor of the insured. *Evanston Ins. Co.,* 370 S.W.3d at 380. Appellate courts should resolve all

doubts regarding the duty to defend in favor of the duty and construe the pleadings liberally. *See Zurich Am. Ins. Co.*, 268 S.W.3d at 491.

3. Discussion

There is no dispute that under the commercial general liability policy, Admiral agreed to defend and indemnify the insured parties for covered claims. Whether Admiral owes a duty to defend under the commercial general liability policy is a question of law which we review *de novo*. *See Solvent Underwriters Subscribing to Energy Ins. Intern., Inc. Cover Note No. EII-3824 v. Furmanite Am., Inc.*, 282 S.W.3d 661, 667 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). If Williams's operative petition does not allege facts within the scope of coverage, Admiral is not legally obligated to defend the suit against its insureds. *See Furmanite Am., Inc.*, 282 S.W.3d at 667 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 939 S.W.2d at 141).

The dispute in this case is whether the "Injury to Workers Exclusion" in the Policy bars coverage. Admiral contends its broad "Injury to Workers Exclusion" comprises four separate exclusions—Absolute Employers Liability, Injury to Leased Worker, Injury to Independent Contractors, and Injury to Temporary/Volunteer/Casual Worker—and bars coverage for bodily injury to every conceivable class of worker if the exclusion applies to any insured.

Admiral argues in its brief that the four separate exclusions, including related definitions, significantly limit coverage as follows:

(1) The Absolute Employers Liability Exclusion bars coverage for bodily injury to any "employee" of "any insured" arising out of and in the course of employment by any insured, or performing duties related to the conduct of any insured's business, regardless of whether any insured may be liable "as an employer or in any other capacity."

The Policy defines an "employee" to include a "leased worker."

(2) The Injury to Leased Worker Exclusion bars coverage for bodily injury to any "leased worker," regardless of whether the insured may be liable "as an employer or in any other capacity." The Policy defines "leased worker" to mean a person leased to a named insured by a labor leasing firm under an agreement between a named insured and a labor leasing firm, to perform duties related to the conduct of the named insured's business.

Because the Policy defines "employee" to include a "leased worker," the Injury to Leased Workers Exclusion is also subsumed within the Absolute Employers Liability Exclusion, and the latter applies to both an "employee" and a "leased worker."

(3) The Injury to Independent Contractors Exclusion bars coverage for bodily injury to any independent contractor hired directly or indirectly by any named insured or on behalf of a named insured. The exclusion also applies to employees of the independent contractor. The exclusion applies whether the insured may be liable "as an employer or in any other capacity."

(4) The Injury to Temporary, Volunteer or Casual Worker Exclusion eliminates coverage for bodily injury to a "temporary worker," "volunteer worker," or "casual worker." The exclusion defines a "temporary worker" as a person who is furnished to any insured to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions. "Casual worker"

means a person, other than a person furnished to a named insured by a labor union, who acts at the direction of and within the scope of duties determined by any insured, and is employed by any insured for a short time and for a limited and temporary purpose; or a person for whom any insured, or a labor leasing firm acting on behalf of any insured, does not withhold federal income taxes and pay federal unemployment tax.

Admiral further argues that under the eight-corners rule, reasonable inferences from Williams's operative petition and supplemental petitions establish that Williams was at least an employee or leased worker of Kinro (a named insured), or otherwise fell within one of the enumerated worker categories while assigned to work at the Kinro facility with Lippert's or Kinro's equipment; thus the exclusionary endorsement defeats any duty to defend for all insureds.

Lippert, Kinro, and LCI contend the operative petition controls and, when read liberally in favor of coverage, does not unambiguously place Williams within any category of the policy's "Injury to Workers Exclusion." Lippert, Kinro, and LCI rely upon Williams's allegations that he was an employee of Diversified Sourcing Solutions, was denied workers' compensation because he was not an employee of Lippert, Kinro, LCI, or a subsidiary, and that Williams's only relationship with Lippert, Kinro, or LCI was as an invitee at the Kinro facility—none of which falls within the exclusion's enumerated worker statuses. Because exclusions are strictly construed against the insurer

and doubts are resolved in favor of the duty to defend, Lippert, Kinro, and LCI argue that Admiral failed to conclusively eliminate the potential for coverage.

Under the general liability policy, coverage is invoked by an "occurrence" that takes place in the policy period, in the "coverage territory," and causes "bodily injury" to which the insurance policy applies. "Occurrence" is defined as "[s]omething that happens or takes place; specif[ically], an accident, event, or continuing condition that results in personal injury or property damage that is neither expected nor intended from the standpoint of an insured party."[2] Williams's petition alleged that he "was moving large plates of glass with a cart . . ." that ". . . unexpectedly shifted due to the fact the cart was not properly equipped for holding or transporting the glass plates . . ." and caused ". . . the plates to fall onto [Williams] causing him severe, permanent and disabling injuries." The period of coverage for the policy was from January 1, 2015, to January 1, 2016, and the operative petition alleged that Williams was injured on August 28, 2015. The policy defined the coverage territory as "[t]he United States of America . . ." and the petition alleged that the location of the facility where Williams was injured was in Waxahachie, Texas. Williams's operative petition satisfies the policy's terms that there be an "occurrence" that takes place in the "coverage territory" and causes "bodily injury" during the policy

---

[2] OCCURRENCE, Black's Law Dictionary (12th ed. 2024).

period. Consequently, absent any applicable exclusion, a review of the operative petition and the policy establish that the alleged incident was potentially covered by the policy, which would obligate Admiral to defend the insureds.

Turning to whether the employee exclusion applies, we again look to Williams's operative petition, specifically where he alleged he was an employee of Diversified Sourcing Solutions, initially in section five and again in section six. In section five Williams alleged he "was an employee of Diversified Sourcing Solutions and assigned to work at a facility located at 101 Mushroom Road, Waxahachie Texas" and that "[h]e was on the premises of the Facility with the permission of owner KINRO TEXAS." In section six, Williams alleged that he was "[a]t all times material hereto . . . the employee of DIVERSIFIED and in the course and scope of his employment when he was injured due to a dangerous activity, condition and/or hazard existing on the premises, causing him serious and permanent and [sic] bodily injuries."

Williams did not allege he was employed by or doing work for Lippert, Kinro, or LCI, nor as the trial court noted in its conclusions of law that Williams did not allege the existence of a "staff leasing agreement" between Diversified and any insured. We further note that Williams did not allege he

was a temporary worker, volunteer worker, casual worker, leased worker, or independent contractor, as those terms are defined in the policy.

Admiral contends that Williams's factual allegations in the operative petition and supplemental petition clearly alleged that Williams was an employee of Kinro. In support, Admiral directs us to Williams's allegations that he was assigned to work at a facility owned by Kinro, that he was an "invitee," and that he was working with equipment, products and instrumentalities owned by Kinro as sufficient to trigger an Employer's Liability Exclusion. Admiral also identifies Williams's allegation that Kinro did not subscribe to workers' compensation insurance to support its contention that "[o]nly an 'employer' can be a non-subscriber to workers' compensation." Admiral argues such an allegation is only relevant when asserting a claim against an employer. Admiral further argues that Williams's supplemental petition—which alleges Kinro and Liberty fraudulently conspired to create workers' compensation coverage to invoke the statutory bar—amounts to a non-subscriber claim. Consequently, Admiral contends the only conclusion that can be reached is that Williams was alleging that he was an employee of Kinro.

The trial court appropriately concluded that "an equally plausible inference could be made that Mr. Williams was not working in any excluded

capacity for any insured, particularly in light of the allegations that: (a) '[a]t all times material hereto, [Mr. Williams] was the employee of Diversified and in the course and scope of [that] employment when he was injured,' and (b) Mr. Williams 'was expressly denied workers compensation benefits for not being an employee of Lippert Components or its subsidiaries.'" (brackets in original).

Williams's allegation that there was a collateral decision that Williams was not an employee of either Lippert, Kinro, or LCI for purposes of eligibility for workers' compensation benefits does constitute a factual allegation regarding Williams's "worker status."

Here an inference could be made that Williams's work duties were directed by Diversified based on Williams's allegation that he was assigned to work at Kinro's facility while an employee of Diversified and was in the course and scope of his employment when injured.

The trial court concluded that Admiral could not meet its burden of proving that the "Injury to Workers Exclusion" applied to the allegations in Williams's operative petition. We agree with the trial court's conclusion that the operative petition did not allege any facts that triggered the exclusion and that the operative petition "unambiguously assert[ed]" the opposite: that Williams was an employee of Diversified Sourcing Solutions—not Lippert or

its subsidiaries—and was acting within the scope of that employment when he was injured.

The trial court further concluded that the only relationship the operative petition alleged between Williams and Lippert or its subsidiary entities was his status as an "invitee" on the premises. We agree with the trial court's analysis that since Admiral's proposed inferences did not necessarily flow from the allegations, the operative petition did not "unambiguously foreclose the possibility of coverage," which is required to excuse an insurer's duty to defend. *See Zurich Am. Ins. Co.*, 268 S.W.3d at 491; *Gen. Star Indem. Co.*, 252 S.W.3d at 456. Because the Injury to Workers Exclusion does not bar suits by invitees, we reject Admiral's argument that Williams's allegations support an inference that he was an employee of the insureds.

Admiral argues that the trial court should have considered extrinsic evidence regarding Williams's "worker status" under the exception to the eight-corners rule established by *Monroe Guaranty Insurance Company, v. BITCO General Insurance Corporation. See generally Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.* 640 S.W.3d 195 (Tex. 2022). However, we decline to consider Admiral's extrinsic evidence regarding Williams's "worker status" under the *Monroe* exception, because: (1) There was no gap in the operative petition that prevented the court from conducting a standard eight-corners analysis, (2)

Admiral's extrinsic evidence regarding Williams's employment status contradicted the facts alleged in the operative petition, and (3) Admiral's argument regarding Williams's relationship to Lippert overlapped with the merits of the underlying liability dispute. *See Monroe Guar. Ins. Co.*, 640 S.W.3d at 201–02. The circumstances in this case do not meet the requirements of the *Monroe* exception which would allow for the consideration of the extrinsic evidence regarding William's "worker status." Accordingly, we look only to the operative petition and the policy.

We conclude that because the four corners of the policy and the four corners of the operative petition established the potential for a covered claim, but did not unambiguously trigger an exclusion, Admiral's duty to defend was invoked. *See Pharr-San Juan-Alamo Indep. Sch. Dist.*, 642 S.W.3d at 471; *see also GEICO Gen. Ins. Co.*, 357 S.W.3d at 824.

We overrule Admiral's first issue.

### C. Issue Two

In its second issue, Admiral contends that the trial court erred in granting Lippert, Kinro, and LCI's motion to strike its extrinsic summary judgment evidence.

Because it is not "initially impossible to determine whether coverage is potentially implicated," we need not reach this issue. *See Allstate Cnty. Mut.*

*Ins. Co. v. Wootton*, 494 S.W.3d 825, 835 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

## D. Conclusion

We affirm the trial court's order granting Lippert's motion for partial summary judgment and denying Admiral's partial motion for summary judgment.

_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: March 12, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
CV06

